UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

JOHN DOE,

        Plaintiff,

     v.                                CAUSE NO.: 1:20-CV-00039-HAB

INDIANA WESLEYAN UNIVERSITY

        Defendant.

## OPINION AND ORDER

After concluding that Plaintiff, John Doe ("Doe"), more likely than not violated its campus code of conduct and community standards by engaging in sexual misconduct, Defendant, Indiana Wesleyan University ("IWU"), dismissed Doe from its campus for one year. Subsequently, Doe initiated the present action against IWU seeking monetary and injunctive relief under Title IX of the Education Amendments Act of 1972 ("Title IX"), 20 U.S.C. §1681, *et. seq.* (Compl. ¶¶ 134–143, ECF No. 1.) Additionally, he invoked this Court's supplemental jurisdiction seeking relief under Indiana state law. (Compl. ¶¶ 144–159.)

Presently before the Court is Doe's Motion for Leave to File First Amended Complaint (ECF No. 50). For the following reasons, the Court will DENY in part and GRANT in part, Doe's motion.

## APPLICABLE STANDARD

"[T]he decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court." *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) (alteration in original) (citation omitted). "The court 'should freely give leave when justice so requires.'" *Id.* (quoting Fed. R. Civ. P. 15(a)(2)); *see Foman v. Davis*, 371 U.S. 178, 182 (1962).

"Although the rule reflects a liberal attitude towards the amendment of pleadings, courts in their sound discretion may deny a proposed amendment if the moving party has unduly delayed in filing the motion, if the opposing party would suffer undue prejudice, or if the pleading is futile." *Soltys*, 520 F.3d at 743 (citation omitted); *Foman*, 371 U.S. at 182; *Ind. Funeral Dirs. Ins. Tr. v. Trustmark Ins. Corp.*, 347 F.3d 652, 655 (7th Cir. 2003) ("[C]ourts may deny an amendment for undue delay, bad faith, dilatory motive, prejudice, or futility." (citation omitted)).

An amendment is futile if it would not survive a dispositive motion such as a motion to dismiss. See *Duthie v. Matria Healthcare, Inc.*, 254 F.R.D. 90, 94 (N.D. Ill. 2008)("For the plaintiffs, futility is measured by the capacity of the amendment to survive a motion to dismiss." (citing *Crestview Vill. Apts. v. U.S. Dep't of Hous. & Urban Dev.*, 383 F.3d 552, 558 (7th Cir. 2004); *Barry Aviation Inc. v. Land O' Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 n.3 (7th Cir. 2004) (collecting cases)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014)(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## PROCEDURAL BACKGROUND

Doe filed his original complaint on January 23, 2020 asserting that IWU's decision to dismiss him from the university was so arbitrary, unjust, and unfair that it amounted to gender discrimination under Title IX. (Compl. ¶¶ 137–143, ECF No. 1.) As part and parcel of that assertion, Doe alleged that IWU engaged in a "discriminatory, gender-biased" process and that the administrators at IWU chose to believe the account of his accuser, Jane Roe ("Roe"), over Doe's own account because she was a female and he was a male. (*Id.* ¶140.) Doe further asserted state

claims for common law denial of basic fairness and breach of a contractual duty of fair dealing. (*Id.* ¶¶ 144-159.) These latter claims attack the fairness of IWU's process for investigating and disciplining alleged violations of its code of conduct. Doe also filed a request for preliminary injunction seeking to vacate IWU's decision to dismiss him and to remove any reference to the decision from his academic record. (ECF No. 5.)

In response to the request for preliminary injunction, the Court authorized expedited pre-hearing discovery. (ECF No. 28.) While discovery was ongoing, IWU moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). (ECF No. 31.) In that motion, IWU argued that the Title IX claim failed to plausibly allege discrimination based on gender and the two state law claims asserted by Doe are not valid causes of action under Indiana law. Before that motion was fully briefed, discovery revealed that Roe told a university professor that she tested positive for HIV after the alleged non-consensual encounter with Doe.[1] Doe then filed his present Motion for Leave to File his First Amended Complaint and his Amended Motion for a Preliminary Injunction (ECF No. 52), re-asserting the original claims, adding new claims and defendants, including IWU officials and Roe, and adding factual allegations, mostly related to the disclosure of Roe's claimed HIV status. IWU objects to the request to amend claiming that the amendments are futile.[2]

## DISCUSSION

### A.  Title IX Claims

---

[1] This revelation caused Doe to file a request for a Temporary Restraining Order seeking to have counsel for IWU confirm the HIV status of Roe. (ECF No.44.) Ultimately, that request was withdrawn after Doe tested negative for HIV. (ECF No. 49.)

[2] IWU objects to all the claims against IWU and its administrative officials.  It does not represent Roe and thus, has lodged no specific objection on her behalf to the motion to amend to add a state law claim against her.

Title IX provides in relevant part:

[N]o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving financial assistance.

20 U.S.C. § 1681. Here, the proposed Amended Complaint retains and augments the allegations of gender discrimination against IWU, but adds Andrew Parker ("Dean Parker") in an apparent attempt to hold him individually liable for Title IX violations along with IWU. IWU's objection is two-fold. First, it argues that liability under Title IX only extends to institutions, not to individuals. Thus, any attempt to hold Dean Parker liable under Title IX is futile and the motion to amend to add him to the claim must be denied. IWU's second objection to the proposed Title IX claim goes even further. It asserts that Doe's additional allegations do not set forth plausible facts demonstrating intentional discrimination based on sex and so, the attempt to amend that claim by adding additional facts is futile.

### 1.   Individual liability under Title IX against Andrew Parker

The Supreme Court has yet to directly address the question of whether Title IX permits individual liability.[3] That said, the balance of courts addressing the statute have held that liability under Title IX may only be directed at institutions. *Hill v. Cundiff*, 797 F.3d 948, 977 (11th Cir. 2015)("Title IX is enforceable against institutions and programs that receive federal funds, but does not authorize suits against individuals."); *Soper v. Hoben*, 195 F.3d 845, 854 (6th Cir. 1999)(Title IX does not provide for the imposition of individual liability; rather, Title IX applies

---

[3] However, the Supreme Court has made clear that "Title IX reaches institutions and programs that receive federal funds" but "has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009).

to recipients of federal funds); *Jones v. S. Univ.*, NO. 18-1034-SDD-EWD, 2020 WL 1431722, at *9 (M.D. La. Mar. 3, 2020), *report and recommendation adopted*, 2020 WL 1433529 (M.D. La. Mar. 23, 2020)("there is no individual liability under Title VI, Title VII, Title IX, and the ADA and RA."); *Doe v. Haas,* 19-CV-0014 (DRH)(AKT), 2019 WL 6699910, at *13 (E.D.N.Y. Dec. 9, 2019)(dismissing individual defendants because "Title IX does not authorize individual liability");*Nelson v. Temple Univ.,* 920 F. Supp. 633, 638 (E.D. Pa. 1996)("Plaintiff's Title IX claims against [the individual] will be dismissed."); *Clay v. Bd of Trs of Neosho Cty Cmty Coll.,* 905 F. Supp. 1488, 1495 (D. Kan. 1995) ("Title IX actions may only be brought against an educational institution, not an individual acting as an administrator or employee for the institution"); *Bowers v. Baylor Univ.,* 862 F. Supp. 142, 146 (W.D. Texas 1994) ("The individual defendants are administrators and employees of Baylor, and do not constitute educational institutions in and of themselves.").

Seventh Circuit precedent further supports the proposition that Title IX actions may only be brought against educational institutions. *Smith v. Metro. Sch. Dist. Perry Twp.*, 128 F.3d 1014, 1019 (7th Cir. 1997)("Because Title IX only protects against discrimination under any education program or activity receiving federal financial assistance, we agree with the First Circuit's conclusion in *Lipsett* [*v. Univ. of Puerto Rico*, 864 F.2d 881, 884, 901 (1st Cir.1988)], that a Title IX claim can only be brought against a grant recipient and not an individual."); *Doe v. Bd. of Educ. of City of Chicago,* No. 19 C 00263, 2020 WL 1445638, at *5 (N.D. Ill. Mar. 24, 2020) ("Like Title IX, neither Title II of the ADA nor § 504 of the Rehabilitation Act permits individual liability."); *Doe v. Lance,* No. 3:95-CV-736RM, 1996 WL 663159, at *2 (N.D. Ind. Oct. 30, 1996)(listing cases) ("The court agrees with the majority of courts that have explicitly

held that a damage remedy under Title IX is only available against an 'education program or activity receiving Federal financial assistance,' not against individuals.").

Doe makes no attempt in his briefing to assert that individual liability does or should extend to Dean Parker under Title IX. Rather, he focuses his entire response on IWU's second argument, that the proposed Amended Complaint fails to allege facts supporting a plausible inference of gender discrimination. In light of the foregoing, the Court concludes that the attempt to amend the Title IX claim to assert an individual liability claim against Dean Parker is futile, as no individual liability is recognized under Title IX. Doe's Motion to Amend to add a claim against Dean Parker under Title IX is denied.

### 2. Title IX claim against IWU

Turning next to the crux of this case, Doe moves to amend his complaint to add additional factual allegations to his Title IX claim against IWU.

### a. The Title IX Claim as Originally Plead and, as Amended

In his original complaint, Doe predicated his Title IX claim (as has become commonplace in pleading Title IX cases like this one) on the now notorious 2011 "Dear Colleague" letter from the Department of Education that provided guidance on the problem of sexual violence at educational institutions. *See* United States Department of Education, Office of the Assistant Secretary of Civil Rights, Dear Colleague Letter (2011), https://www2.ed.gov/print/about/offices/list/ocr/letters/colleague-201104.html. This letter, cited in Doe's original and proposed amended complaints, advocates for a preponderance of the evidence standard in sexual misconduct investigations and has been oft-cited as a justification for colleges to over-enforce campus sexual misconduct rules in favor of the accusers. *See Lee v. Univ. of New Mexico*, No. CIV 17-1230 JB\LF, 2020 WL 1515381, at *36 (D.N.M. Mar. 30, 2020) (discussing

the Dear Colleague letter and noting the vigorous debate by courts and commentators over the proper standard of review for campus sexual assault proceedings.)[4] Against this backdrop, the original complaint asserted that a combination of factors, taken together, create an inference of gender discrimination.  For instance, Doe pled that IWU's process was "discriminatory" and "gender-biased" when set against the "context of pressure from the [Office of Civil Rights], the public, and the climate on IWU's campus." (Compl. ¶ 137.) As for his particular circumstances, Doe alleged the following:

- IWU "ignored evidence supporting John's version of events and undermining [Roe's] credibility and imposed a sanction on him that is likely to severely and irreparably harm him for life." (Compl. ¶ 138.)

- IWU imposed a no-contact order on [Doe] without interviewing him, or providing him with an opportunity to challenge the evidence against him or explain why the measure was unjustified (Compl. ¶ 139.)

- IWU "appears simply to have chosen to believe [Roe] because she is a woman and to disbelieve [Doe] because he is a man." (Compl. ¶ 140.)

- IWU "did not impose any sanctions on [Roe] for her violations of the IWU rules prohibiting sexual activity outside of marriage and visiting the dorm room of an opposite sex student, making no mention of these violations in [the] report and failing to consider how they might influence [Roe's] actions and credibility (Compl. ¶ 141.)

---

[4] The Department of Education rescinded this guidance in September 2017 and issued subsequent interim regulations to guide, without the force of law, colleges and university processes. On May 7, 2020, the Department of Education announced final regulations that, unlike the prior guidance, will become law. Colleges and universities will be required to comply with the regulations by August 14, 2020. *See* Press Release, U.S. Dep't of Ed., Secretary Devos Takes Historic Action to Strengthen Title IX Protections for All Students (May 6, 2020), https://www.ed.gov/news/press-releases/secretary-devos-takes-historic-action-strengthen-title-ix-protections-all-students.

Each of these specific allegations followed generalized assertions wherein Doe detailed IWU's disciplinary process, his treatment by IWU officials during their investigation, and IWU's conclusions. Relevant here, Doe pled facts indicating that he: (1) was notified of the misconduct allegation (Compl. ¶ 81); (2) participated in a conduct meeting with IWU officials where he was interviewed (Compl. ¶ 82); (3) participated in a second meeting wherein he was allowed to review interview notes, ask questions, and write down questions for [Roe] if he wanted) (Compl. ¶ 86). Additionally, he pled facts that IWU: (1) interviewed Roe about her allegation (Compl. ¶ 80); (2) interviewed other witnesses, including Doe's roommate (Compl. ¶ 83); (3) interviewed Roe a second time to ask follow-up questions (Compl. ¶ 89.)

As for the decision itself, Doe pled that IWU determined, "it was more likely than not" that [Doe] engaged in sexual assault, defined as 'sexual contact … to which any party does not give full and free consent." (Compl. ¶ 92.) "Dean Parker wrote that, "[w]hile there were multiple differences between the accounts … there were also some key similarities regarding details surrounding the evening (Nov. 6, 2019) and acts in question." (Compl. ¶94.) Dean Parker's findings were based, "largely on those similarities.") (*Id.*)

- "Dean Parker's brief recitation of supposed similarities, which omitted key aspects of [Doe's] version of events, focused primarily on the parties' agreement that sexual intercourse occurred and ignored their stark disagreement about what happened before intercourse and whether the sexual activity was consensual." (Compl. ¶ 95).

- "In fact, Dean Parker's letter highlighted the parties' disagreements by stating that [Roe] 'indicated that she told [Doe] 'no' or 'stop' on several occasions,' whereas [Doe] indicated that [Roe] did not suggest in any way that she wanted him to stop. (Compl. ¶ 96.)

Doe also asserted that he requested a Case Review[5] (Compl. ¶ 108) and that request was denied because [Doe's] request, "did not meet the Handbook criteria" to justify forwarding to a Case Review Board. (Compl. ¶ 117.)

With respect to his proposed Amended Complaint, Doe repleads all of the above allegations, (*see* Am. Compl. ¶¶ 88, 90–92, 96, 99, 108–113, 162–165, 168), and adds statistical allegations: "since at least 2017, only male students at IWU have been accused of violating the Handbook's prohibition on sexual assault, found guilty, or sanctioned" (Am. Compl. ¶ 60) and "since at least 2017, IWU has never reversed or altered a finding that one of those male students violated the Handbook prohibition on sexual misconduct (*Id.* at ¶ 61.) Additionally, Doe adds the following:

- "Dean Parker ignored and made no mention of the fact that the day before the incident in question, IWU officials reprimanded [Roe] at a student conduct meeting and warned her to 'keep curfew' for the rest of the semester." (Am. Compl. ¶ 166.)

- "Dean Parker blatantly ignored the fact that [Roe] asserted she had HIV and contracted it from [Doe], failing to conduct any follow up inquiry of [Roe]. Yet, Dean Parker asked third parties about [Doe's] medical history." (Am. Compl. ¶ 167.)

---

[5] A Case Review is a review process permitted in IWU's Handbook. Requests for a case review may be made after a decision and sanction is issued if the student believes one of the following grounds is applicable: (1) there is new evidence now available that was unavailable or unknown at the time of the conduct meeting that could affect the outcome; (2) IWU significantly deviated from its stated procedures in such a way that materially affected the fairness of the student conduct meeting; or (3) the sanction is substantially disproportionate to the severity of the violation. (Am. Compl. ¶ 54.) Requests are reviewed by the Dean of Students or his designee and "if it is determined that the request meets at least one of the grounds outlined" then the case is forwarded to either the Case Review Board or the Director of Student Conduct & Community Standards. (*Id.* ¶ 55.) The Handbook specifically provides that a case review is, "not a re-hearing of the conduct process." (*Id.* at ¶ 51)

- "IWU leadership, including Chancellor Rodney Reed himself, intervened to ensure that [Doe] never had a fair hearing by instructing Brandon Hill, ostensibly the official considering [Doe's] request for a Case Review, to deny the request just two days after [Doe] made it." (Am. Compl. ¶ 169.)

As noted, Doe's motion to amend followed on the heels of IWU's motion to dismiss the original complaint. Rather than address the arguments raised in IWU's motion, Doe sought leave to amend seeking to augment the Title IX allegations as set out above. IWU contends, once again, that the allegations in the original complaint are defective and, even if combined with the above additional allegations in the proposed amended complaint, remain insufficient to plausibly infer Title IX discrimination. For this reason, IWU argues that the proposed Amended Complaint should be denied as futile.

"District courts may refuse to entertain a proposed amendment on futility grounds when the new pleading would not survive a motion to dismiss." *Gandhi v. Sitara Capital Mgmt., LLC*, 721 F.3d 865, 869 (7th Cir. 2013). However, it should be certain from the face of the complaint that any amendment would be futile or otherwise unwarranted before leave to amend is denied. *Al Khader v. Pompeo*, No. 18-CV-1355, 2020 WL 550606, at *4 (N.D. Ill. Feb. 4, 2020). In ruling on a motion to amend, a court should only delve into the merits when it is absolutely clear that the amendment is frivolous. *See generally* 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE, § 1487, at 635–43 (2nd ed. 1990). Moreover, the review for futility, "is not equivalent to an evaluation of the underlying merits of the case. To the contrary, '[u]nless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations ... conjecture about the merits of the litigation should not enter into the decision whether to allow amendment.' " *Next Generation Grp., LLC v. Sylvan Learning Ctrs.*, LLC, CCB-11-0986, 2012 WL 37397, at *3 (D. Md. Jan. 5, 2012)

10

(quoting *Davis v. Piper Aircraft Corp.*, 615 F.2d, 606, 613 (4th Cir. 1980)). Indeed, "[i]t is often a better exercise of the court's discretion ... and a conservation of judicial resources, to leave decisions on the merits with respect to motions to amend until the matter has been fully briefed in a motion to dismiss. *DirecTV, Inc. v. Benson*, 333 F. Supp. 2d 440, 444 (M.D.N.C. 2004) (citation omitted). "That is particularly true when the Plaintiff seeks 'to amend [its] allegations in view of Defendants' Motion[ ] to Dismiss.'" *Glob. Locating Sys., LLC v. ShadowTrack 247, LLC,* No. 1:19-CV-00225-MR, 2020 WL 2114381, at *3 (W.D.N.C. May 4, 2020) (quoting *Orr v. U.S. EPA*, No. 1:19 CV 226, 2020 WL 223920, at *2 (W.D.N.C. Jan. 14, 2020).

Doe's proposed amendments to the Title IX claim do not appear to suffer from obvious insufficiency or facial frivolity, as is the case with some of Doe's other claims. As such, they do not appear to be facially insufficient to justify denial under **Rule 15(a)(2)**. That said, while Doe's proposed amendments are enough to get by Rule 15 and its mandate that "leave be freely given," the Court does not express any judgment as to whether the proposed Amended Complaint could survive a renewed Motion to Dismiss. Rather, judicial expediency and efficiency, particularly in light of the pending request for preliminary injunctive relief, guides the Court to streamline this process, grant the amendment, and address the merits of Doe's Title IX claim on a renewed motion to dismiss. At that point, the Court may address Doe's Title IX claim on the basis of complete briefing and a developed record. Accordingly, the Court will grant Doe's motion to amend the Title IX claim against IWU.

### B.  Common Law Denial of Basic Fairness

In his Complaint, Doe alleges that IWU denied his common law right to "basic fairness." (Compl. ¶ 147.) Doe claims that IWU had an "obligation to provide basic fairness in its

proceedings…separate from and in addition to its contractual obligation to follow the rules it set forth in its Handbook." (Id. ¶ 146.) He claims that IWU "had a duty, as a matter of common law, to ensure that the proceedings against [him] were conducted with basic fairness." (*Id.* ¶ 147.) And he claims that IWU "materially breached this duty of basic fairness." (*Id.* ¶ 148.) Doe's proposed Amended Complaint leaves the above allegations intact but seeks to add Dean Parker to the claim.

Doe claims that he is owed, and was denied, a common law duty of basic fairness resulting in harm to him. This Court has not found a single Indiana authority establishing the existence of such a cause of action.[6] Doe asserts, however, that such a claim is recognized, albeit, under Massachusetts law, *Doe v. Brandeis,*177 F. Supp. 3d 561, 601 (D. Mass. 2016) ("School disciplinary hearings must be "conducted with basic fairness.") (quoting *Cloud v. Trs of Boston Univ.*, 720 F.2d 721, 725 (citing Massachusetts law), and that this court should apply it here. Doe further contends that *Brandeis* is a leading case, not an outlier as other federal courts examine the "basic fairness" of university disciplinary proceedings. (Reply Br. at 11)(citing *Doe v. College of Wooster*, 243 F.Supp.3d 875, 891 (N.D. Ohio 2017).

Doe is correct that other federal courts have examined a concept of fairness in cases such as these. However, none of them, not even *Brandeis,* has evaluated fairness as an entirely separate cause of action.  Indeed, a review of the decisions Doe cites demonstrate that the consideration of the fairness of the disciplinary process is typically tethered to another claim. *Brandeis*, 177 F.Supp.3d at 612 (denying defendant's motion to dismiss plaintiff's breach of contract claim based

---

[6]In the context of a UCC case, the Indiana Court of Appeals has concluded that no independent duty of fairness exists. *Fifth Third Bank of Ind.v. The Morley Group, LLC,* No. 1:05-cv-0055-JDT-TAB, 2005 WL 4882768, at *2 (S.D.Ind. July 28, 2005)

on the university's "alleged failure to provide him with basic fairness in the disciplinary process");

*Coll. of Wooster*, 243 F.Supp. 3d at 891 (analyzing whether the college breached its contractual obligations by failing to comply with the student handbook leading to the denial of a fair process); *Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 485 (S.D.N.Y. 2015) (considering the fairness of the proceeding as part of the Title IX claim).

Here, the Court finds no basis for a separate cause of action under Indiana common law for the denial of basic fairness. The fairness of the proceeding may be a relevant consideration as part of other Indiana causes of action, such as Doe's breach of contract claim against IWU, but does not constitute a separate cause of action. As such, the Court concludes that the original claim for common law denial of fairness does not state a claim for relief under Indiana law and is *sua sponte* dismissed with prejudice. *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir.1997) (sua sponte dismissal pursuant to Rule 12(b)(6) is permitted, "provided that a sufficient basis for the court's action is evident from the plaintiff's pleading.") Likewise, the attempt to add Dean Parker to a non-recognized state law claim, is futile. The motion to amend as to this claim is denied.

C. **Breach of Covenant of Good Faith and Fair Dealing**

In his original complaint, Doe asserted that an implied covenant of good faith and fair dealing existed between himself and IWU, that IWU breached this covenant by failing to provide him a fair process after he was accused of violating school policies, and he's been harmed as a result. (Compl. ¶¶ 156–158.) In his proposed amended complaint, Doe goes even further, attempting to extend the claim to include Dean Parker and Brandon Hill and assert an express covenant of good faith and fair dealing based on provisions in IWU's Handbook. (Am. Compl. ¶¶ 191–196.)

13

Cutting through the underbrush, Doe altogether fails to plead the existence of any contract between himself and Dean Parker or himself and Hill from which any covenant, express or implied, could be derived. As a result, the attempt to piggyback claims against Dean Parker and Hill onto the claims against IWU for breach of the covenant of good faith and fair dealing are futile and the motion to amend to add them fails.

As for the remaining new assertions proposed, they are, to say the least, confounding as to what cause of action Doe is pleading. Doe's newest assertion that IWU's Handbook "*expressly promised that IWU would provide a student conduct process that is 'fair and timely,' with 'consistent and fair responses to misconduct…'*" (emphasis added) paves the way for a claim that is ostensibly subsumed by Doe's breach of contract claim, rather than a separate claim for breach of a covenant of good faith and fair dealing. Indeed to the extent Doe is arguing that the promise in IWU's handbook creates an express contract that IWU breached, his claim of breach of a duty of good faith and fair dealing is merely a basis for a breach of contract action as it involves conduct encompassed by contractual relations.

Doe then goes on to plead, "[a]s a result, the contract between [Doe] and IWU contained an *implied* covenant of good faith and fair dealing, which IWU, Dean Parker, and Brandon Hill breached, for all of the reasons set forth above, including but not limited to IWU's failure to provide [Doe] with a fair process after he was accused of violating school policies." (Am. Comp. ¶ 194.) To the extent Doe is asserting a claim based on an implied contract of good faith and fair dealing, Indiana law does not impose a generalized duty of good faith and fair dealing on every contract.  Rather, the recognition of an implied covenant is generally limited to employment

14

contracts and insurance contracts. *Allison v. Union Hosp., Inc.,* 883 N.E.2d 113, 123 (Ind.Ct.App.2008).

That's where the next allegation takes hold. Doe asserts "IWU stood in a superior, special, or fiduciary relationship to [Doe], with special obligations to act fairly and in good faith towards him." (Am. Compl. ¶ 193.) Doe appears to make this allegation to conform to language from *Bowers v. Anthem, Inc.* articulating that claims for breach of the implied covenant of good faith and fair dealing may exist "when one counterparty stands in a fiduciary, superior, or special relationship to the other." *Bowers,* No. 1:19-CV-00802-TWP-DLP, 2019 WL 5965235, at *5 (S.D. Ind. Nov. 13, 2019) (citing *Perron v. J.P. Morgan Chase Bank, N.A.*, 845 F.3d 852, 856 (7th Cir. 2017).

In response, IWU points out that Indiana courts have not recognized a claim for breach of the duty of good faith and fair dealing in the context of a relationship between a student and an educational institution.  Indeed, quite the opposite, Indiana has specifically concluded that "a separate cause of action for alleged breach of duty of good faith and fair dealing is inapposite" in cases between a student and an educational institution. *Amaya v. Brater,* 981 N.E.2d 1235, 1239 (Ind.Ct.App. 2013).[7] Because Indiana does not permit a separate cause of action for breach of the

_____

[7] In Amaya, the Court went on to state:

> The duty of good faith and fair dealing is a concept created by the Uniform Commercial Code and restricted to contracts for the sale of goods and is also a concept which our courts have expanded to insurance contracts as a cause of action sounding in tort. *See Ford Motor Credit Co. v. Garner,* 688 F.Supp. 435, 442 (N.D.Ind.1988) (finding that duty of good faith supplied by Indiana's Uniform Commercial Code is specifically restricted to contracts within Indiana Code Article 26–1); *Erie Ins. Co. v. Hickman,* 622 N.E.2d 515, 519 (Ind.1993) (recognizing that insurance companies have an implied contractual duty of good faith the breach of which sounds in tort; damages for breach of

implied duty of good faith and fair dealing under these circumstance, the motion to amend is denied as futile and this claim, too, is dismissed.

   D.  **Breach of Contract (against IWU, Parker, and Hill)**

Doe's proposed Amended Complaint adds a new claim for breach of contract against IWU, Parker and Hill. (Am. Compl. ¶¶ 179–190.) "The relationship between a student and an educational institution is contractual in nature, and regulations and policies made available to the student form part of the contract." *Doe v. Indiana Univ. - Bloomington*, 2019 WL 341760, at *7 (S.D. Ind. Jan. 28, 2019) (citing *Amaya*, 981 N.E.2d at 1240. In addressing breach of contract claims between students and universities, "the sole function of courts is to determine whether the educational institution acted illegally, arbitrarily, capriciously, or in bad faith." *Id.* (quoting *Brater*).

Here, Doe alleges at ¶180 of its proposed Amended Complaint that "[Doe] and IWU entered into a valid contract, which incorporated IWU's policies relating to conduct and disciplinary proceedings." Similarly, at ¶184 Doe alleges "IWU breached the agreement with John for all of the reasons set forth above, including but not limited to IWU's failure to provide John with the procedures specifically promised to him in the Handbook after he was accused of violating school policies." What is missing from the proposed Amended Complaint is any assertion or

_____

duty of good faith likely to be coterminous with those recoverable in breach of contract action). As Amaya fails to direct us to, and we are unaware of, any authority for the proposition that a separate cause of action for breach of good faith exists here, we conclude that counts IV and V of Amaya's complaint are duplicative and raise only one claim for breach of contract against IUSM.

*Amaya*, 981 N.E.2d at 1239.

allegation that Dean Parker or Hill owed any contractual obligation to Doe. Without pleading the existence of a contract between Dean Parker, Hill and Doe, Dean Parker and Hill cannot be held liable under a breach of contract theory.   Thus, Parker and Hill are not proper defendants to a breach of contract action, only IWU.

But, there's more. As set forth above, Doe must plead facts that plausibly infer that the defendant acted arbitrarily, capriciously, or in bad faith. Doe pleads the following:

- "the Handbook promises that a request for a Case Review must be reviewed by 'the Dean of Students or his/her designee'" (Am. Compl. ¶185.)

- "Instead, IWU's Chancellor, Rodney Reed, in consultation with inside and outside counsel, directed Brandon Hill to deny [Doe's] request for a case review just two days after [Doe] submitted it." (Am. Compl. ¶ 186.)

- "Then, at Brandon Hill's request, Dean Parker himself drafted the letter affirming his own decision, which [Doe] received several weeks later…" (Am. Compl. ¶187.)

- "[Doe] was therefore denied the procedures expressly promised to him under the Handbook." (Am. Compl. ¶188.)

While none of these allegations either alone or, in tandem, present a plausible inference that IWU engaged in arbitrary or capricious conduct, or that its conduct was in the absence of good faith, the Court cannot conclude that it is evident from the face of the amendment that the claim is futile. Doe's generalized allegations throughout the proposed amended complaint inform the breach of contract allegations in that they plausibly infer that IWU arbitrarily applied its procedures, rushed to judgment, and acted in a manner designed to discriminate against Doe. Whether those allegations ultimately bear fruit is a topic for another day.  For today, the motion to amend to add the breach of contract claim against IWU is granted.

**D.**     **Intentional Infliction of Emotional Distress against IWU and Dean Parker**

Next, Doe's proposed Amended Complaint adds a new claim for intentional infliction of emotional distress ("IIED") against IWU and Dean Parker asserting that they "deliberately covered up and failed to investigate [Roe's] assertion that she had HIV and contracted it from [Doe], and then failed to notify [Doe] that he may be at risk of having HIV." (Am. Comp. ¶ 199.) IWU again objects asserting that the allegations, as pled, fail to set forth a claim for IIED.

To establish a claim for IIED, Doe must allege that the defendants: (1) engaged in extreme and outrageous conduct; (2) intentionally or recklessly (3) caused (4) severe emotional distress to another. *Curry v. Whitaker,* 943 N.E.2d 354, 361 (Ind. Ct. App. 2011). "The requirements to prove this tort are 'rigorous.'" *Id.* If a complaint fails to contain sufficient factual allegations that the defendant intended to emotionally harm the plaintiff, the complaint may be dismissed for failure to state a claim upon which relief can be granted. See *Tucker v. Roman Catholic Diocese of Lafayette-In-Indiana, 837 N.E.2d 596 at 603.* (Ind. Ct. App. 2005).

Here, the proposed Amended Complaint fails on several grounds, not the least of which is that it does not contain any factual allegations raising a plausible inference that the proposed defendants specifically intended, either individually or in conjunction with one another, to emotionally harm Doe. Indeed, the basis for the IIED claim appears to be what IWU and Dean Parker omitted doing, (i.e., not telling Doe of Roe's HIV allegation during the investigation and not investigating the allegation further), not any affirmative action on their part (such as telling him he might have HIV with the specific intent to devastate him emotionally). Thus, Doe appears to contend that these defendants, individually or in conspiracy with one another, harmed him by not disclosing that he might have contracted HIV although he provides no insight on how he

18

suffered any emotional distress from not being apprised of that fact.  Indeed, this appears to fall squarely within the old adage "[s]o long as I know it not, it hurteth me not." G Pettie, PETIT PALACE (1576).

Other than the above fact, Doe relies on conclusory allegations that the defendants intentionally or recklessly placed him at risk by not advising him of Roe's statement regarding her HIV status, seeking to confirm the statement, or investigating it to determine its truthfulness. Moreover, all of the allegations set out in the Amended Complaint speak of the Defendants' actions in terms of "causation."  For instance, Doe asserts that "IWU and [Dean] Parker caused [Doe] to suffer severe emotional distress." (Am. Compl. ¶ 201.) However, causing a person to have emotional distress divorced from an intention to cause emotional distress cannot be a basis for an IIED claim. *Bah v. Mac's Convenience Stores, LLC,* 37 N.E.3d 539, 550 (Ind.Ct.App.2015) (discussing IIED claims and noting "at its foundation 'is the intent to harm the plaintiff emotionally.'")(quoting *Curry v. Whitaker,* 943 N.E.2d 354, 361 (Ind.Ct.App.2011)).

Finally, and perhaps more determinative than the failure to plead intent to cause emotional harm, numerous cases similar to the one here hold that a university's investigation, even if objectionable or unfair, does not rise to the level of extreme and outrageous conduct that goes beyond all possible bounds of decency.  This is true, regardless of whether the plaintiff has stated a claim under Title IX.

In *Doe v. The Trs of the Univ.of Pennsylvania*, 270 F.Supp.3d 799, 822–25 (E.D. Pa. 2017), for example, the court denied the defendant's motion to dismiss the plaintiff's Title IX erroneous outcome and selective enforcement claims and found that the plaintiff had sufficiently alleged gender bias and an effort by the university to hold males accused of sexual assault responsible.

The plaintiff also alleged that university officials intentionally inflicted emotional distress upon him by distorting facts relating to the alleged sexual assault, improperly attacking his credibility, and unjustifiably branding him a rapist. *Id.* at 826–27. Despite having allowed the plaintiff's Title IX claim to survive, the court rejected his IIED claim finding that even if the university officials' conduct was objectionable, it was not the type of extreme conduct beyond the "bounds of decency" such that it would give rise to an intentional infliction claim. *Id.*

Similarly, in *Nungesser v. Columbia University*, 169 F.Supp.3d 353, 364–67 (S.D.N.Y. 2016), the court rejected the plaintiff's IIED claim because he had not alleged conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." The court explained that although the plaintiff disagreed with how the university handled his sexual assault case and female students' activism on campus, he had not plausibly alleged any conduct that was extreme and outrageous. *Id.* The court further reasoned that the plaintiff had not alleged any facts indicating that the university officials intended to cause him any distress. *Id. See also Fellheimer v. Middlebury Coll.*, 869 F.Supp. 238, 247 (D. Vt. 1994) ("A College's decision, when confronted with a female student's accusation of rape, to confront the male student with the charges, hold a hearing, and support the findings of the initial tribunal on appeal, even where various procedural errors are alleged, cannot form the basis of an IIED claim."); see also *Brandeis*, 177 F.Supp.3d at 617 (D. Mass. 2016) ("Although [the university's] actions in [plaintiff's] case may have been unreasonable and unfair," the facts "do not appear to constitute the sort of targeted, deliberate, and malicious conduct that is required for an IIED claim.")

In light of these cases and the absence of factual assertions plausibly inferring intent, the Court concludes that the motion to amend the complaint to add a claim for IIED must be denied as futile.

E. **Defamation Claim against Roe**

Doe has also amended his complaint to add a state law defamation against Roe based upon her communication to officials at IWU that she tested HIV positive after her non-consensual encounter with Doe. In Indiana, the basic tenets of a defamation claim are: (1) a communication with defamatory imputation, (2) malice, (3) publication, and (4) damages." *Trail v. Boys & Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 136 (Ind. 2006). A communication is defamatory *per se* if it imputes that the plaintiff has a loathsome disease. *Kelley v. Tanoos*, 865 N.E.2d 593, 596 (Ind. 2007). In such a case, the plaintiff is entitled to presume damages as a natural and probable consequence of the defamation. *Id.*

Doe has asserted factual allegations to infer each of the above elements for a state law defamation. IWU has offered no objection to the addition of this claim and there is nothing on the face of the amendment that makes it improper.  As such, the motion to amend to add this claim is granted.

**CONCLUSION**

Based on the foregoing, Plaintiff's Motion for Leave to File First Amended Complaint [ECF No. 50] is **DENIED** with regard to the Title IX claim against Dean Parker, the common law claim for denial of basic fairness, the breach of the covenant of good faith and fair dealing claim, the breach of contract claim as to Dean Parker and Hill, and the intentional infliction of emotional distress claim. The Motion is **GRANTED** as to the Title IX claim against IWU, the breach of

contract claim against IWU, and the defamation claim against Roe. By May 22, 2020, Plaintiff shall file amended versions of the Amended Complaint and Amended Motion for Preliminary Injunction consistent with this Order. The amended versions shall set forth only the Title IX and breach of contract claims against IWU, and the defamation claim against Roe. Plaintiff's original claims of common law denial of basic fairness and breach of the covenant of good faith and fair dealing are DISMISSED WITH PREJUDICE as no amount of additional pleading will permit these causes of action to proceed under Indiana law.

Upon the filing of the Amended Complaint in accordance with this Order, IWU's Motion to Dismiss will be DENIED [ECF No. 31] as moot and without prejudice to its renewal. Doe's Motion for Preliminary Injunction [ECF No. 5] based on the original complaint will be DENIED as MOOT.

SO ORDERED on May 12, 2020.

s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY

22